UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

OBAR ELLIS #230146,	Case No. 2:18-cv-00119

        Plaintiff,	Hon. Gordon J. Quist
                                        U.S. District Judge

v.

ALICIA HETRICK, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This is a civil rights action brought by state prisoner Obar Ellis pursuant to 42 U.S.C. § 1983. Obar Ellis's claims that the three Defendants – Prison Counselor (PC) Hetrick and Corrections Officers Balbierz and Crisp – retaliated against him for giving information in a sexual assault investigation and denied him access to the courts. These allegations would constitute violations of the First Amendment.

Ellis's complaint sets forth four separate claims against these Defendants and identifies the grievance associated with each. Defendants have moved for summary judgment. (ECF No. 23.) They concede that Ellis has exhausted his access-to-the-courts and retaliation claims against PC Hetrick for events on March 28, 2018, but nevertheless ask the Court to dismiss the entire case. Ellis has responded. (ECF No. 28.)

1

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court (1) grant in part and deny in part Defendants' motion, and (2) dismiss without prejudice all of Ellis's claims except his access-to-the-courts and retaliation claims against PC Hetrick for events on March 28, 2018. If the Court adopts this recommendation, COs Balbierz and Crisp will be dismissed from the case.

## II.  Factual Allegations

The events in this case took place at Chippewa Correctional Facility (URF) in February and March 2018. Ellis says that he provided information to the Michigan State Police regarding sexual assaults at the prison. He says the Defendants then retaliated against him because he provided this information. Specifically, he alleges the following:

1. On February 12, 2018, PC Hetrick threatened him for providing information to police. Ellis views this as a retaliatory act and says he filed grievance **URF-1802-0487-03B** as a result.

2. On March 14, 2018, Corrections Officer (CO) Balbierz searched his cell and destroyed some of his property. Ellis also views this as a retaliatory act and says he filed grievance **URF-18-03-0811-17B** as a result.

3. On March 26, 2018, CO Crisp confronted Ellis in the yard and terminated some of Ellis's privileges. Ellis views this as a retaliatory act and says he filed grievance **URF-18-03-0921-17B** as a result.

4. On March 28, 2018, PC Hetrick refused to send legal mail for Ellis in retaliation for his giving information to police. Ellis says he filed grievance **URF-18-03-0932-15B** as a result.

## III. Summary of Grievances Identified by Ellis

The grievances filed by Ellis and identified in his complaint are summarized in the table below.

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. and PageID. |
|---|---|---|---|---|
| URF-1802-0487-03B | Hetrick | On 2.12.18, Ellis was allegedly called to Hetrick's office where she questioned and allegedly threatened Ellis about a sexual assault claim that Ellis reported to the MI State police. | No policy violation was found at Step I.<br><br>Step II appeal was improperly filed; so, it was rejected.<br><br>Record shows that Ellis did not appeal the grievance to Step III. | ECF No.24-4, PageID.115-119 |
| URF-18-03-0811-17B | Balbierez | On 3.12.18, CO Balbierz allegedly identified Ellis as a witness in another prisoner's sexual assault case against another CO, after which, Balbierz "tore down" Ellis's cell. | Denied at Step I; Denial is upheld through Step III.<br><br>Step III denial occurred on August 7, 2018. | ECF No. 24-3, PageID.104-108 |
| URF-18-03-0921-17B | Crisp | On 3.26.18, Crisp allegedly cursed at Ellis and told Ellis that he better sign-off on the PREA investigation.<br><br>Ellis raised the issue of retaliation. | Denied at Step I; Denial is upheld through Step III.<br><br>Step III denial occurred on August 7, 2018. | ECF No. 24-3, PageID.109-113 |
| URF-18-03-0932-15B | Hetrick | On 3.28.18, Hetrick allegedly refused to mail Ellis's legal correspondence because he filed a prior grievance against her (URF-1802-0932-15B).<br><br>Raises the issue of retaliation and access to the courts. | Denied at Step I; Denial is upheld through Step III.<br><br>Step III denial occurred on May 30, 2018. | ECF No. 24-3, PageID.99-103 |

3

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Exhaustion of Administrative Remedies

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85. The doctrine of exhaustion "provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Woodford*, 548 U.S. at 85 (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 [1938]). Afterall, "the benefits of exhaustion [] include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur

4

by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (citing *Woodford*, 548 U.S. at 88-91; *Porter v. Nussle*, 534 U.S. 516, 534 (2002).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones*, 549 U.S. at 212-16. "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Bama*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642

(6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91. In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

6

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[1], the inmate must first

---

[1] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are

7

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

---

"subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## VI. Analysis

Defendants concede that Ellis exhausted his administrative remedies relating to his access-to-the-courts and retaliation claims against PC Hetrick for events that took place on March 28, 2018. (ECF No. 24, PageID.79.) Defendants argue that Ellis's first grievance[3] was not properly exhausted. They also argue that Ellis's grievances[4] against COs Balbierz and Crisp were not properly exhausted because Ellis filed this lawsuit before those grievances had been decided through Step III. Defendants ask the Court to dismiss Plaintiff's entire case. For the following reasons, the undersigned concludes that Ellis failed to exhaust (1) his retaliation claim against Hetrick for events on March 12, 2018, (2) his retaliation claim against CO Balbierz for events on March 14, 2018, and (3) his retaliation claim against CO Crisp for events on March 26, 2018. The undersigned respectfully recommends dismissal of the unexhausted claims but recommends that the Court allow Ellis's fourth claim to go forward.

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[3] Grievance **URF-1802-0487-03B**.

[4] Grievances **URF-18-03-0811-17B** and **URF-18-03-0921-17B**.

9

In Ellis's response regarding the first grievance – **URF-1802-0487-03B** – he alleges that he could not exhaust the grievance because Grievance Counselor Michael McLean refused to furnish him with the required form to submit a Step II appeal. (ECF No. 1, PageID.4.)  However, the record shows differently.  (*See* ECF No. 24-4.)  First, it shows that McLean furnished Ellis with the required form on February 22, 2018.  (*Id.*, PageID.115, 120.)  Second, it shows that Ellis submitted a Step II appeal that did not satisfy MDOC policies and that the appeal was rejected for noncompliance.  (*Id.*, PageID.115-116, 120.)  And third, it shows that that Ellis had the opportunity to refile a Step II appeal, but he did not.  (*Id.*)  Because Ellis failed to appeal grievance **URF-1802-0487-03B**, it is recommended that the Court find that Ellis failed to properly exhaust the grievance and the claims within it.

The MDOC ruled on grievances **URF-18-03-0811-17B** and **URF-18-03-0921-17B,**[5] to complete Step III of the grievance process, on August 7, 2018.  (ECF No. 24-3, PageID.104, 109.)  However, Ellis filed this action in federal court on July 7, 2018.  (ECF No. 1, PageID.7.[6])  As a result, Ellis initiated this litigation prior to properly exhausting grievances **URF-18-03-0811-17B** and **URF-18-03-0921-17B**.  The United States Supreme Court in *Jones* held the PRLA's exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their

---

[5]    As summarized in the table in Section II, these two grievances contain Ellis's complaints against Balbierz and Crisp.

[6]    Ellis's signature on the complaint is dated July 7, 2018.  The postmark shows a date of July 16, 2018.  And the Court filed the complaint on July 19, 2018.

10

responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Because this action was filed in federal court before Ellis's grievances were properly exhausted, MDOC was deprived the opportunity to answer and potentially remedy Ellis's claims as required before filing this lawsuit. Thus, the undersigned concludes that Ellis failed to properly exhaust the claims set forth in grievances **URF-18-03-0811-17B** and **URF-18-03-0921-17B**.

Defendants argue that Ellis's fourth grievance[7] should also not be considered properly exhausted, despite Defendants admitting that the "grievance appears to have exhausted the allegation that Hetrick refused to process Ellis' mail in retaliation for him having filed an earlier grievance against her."[8] (ECF No. 24, PageID.79-80.) Defendants argue that the PRLA requires proper exhaustion of all four of Ellis's grievances before this lawsuit may be considered by a federal court. (*Id.* (citing *Ngo*, 548 U.S. at 95.)

Defendants appear to be advancing the defunct total exhaustion rule. The United States Supreme Court struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Jones*, 549 U.S. at 220-226. Because Defendants concede that Ellis exhausted his claims in grievance **URF-18-03-0932-15B**, the undersigned

---

[7] Grievance **URF-18-03-0932-15B**.

[8] On May 30, 2018, grievance **URF-18-03-0932-15B** was exhausted when its appeal to Step III was denied. (ECF No.24-3, PageID.99.) As such, this grievance was exhausted prior to this lawsuit being filed on July 7, 2018.

11

concludes that Ellis properly exhausted his access-to-the-courts and retaliation claims against PC Hetrick for events on March 28, 2018.

## VII. Recommendation

The undersigned respectfully recommends that this Court (1) grant in part and deny in part Defendants' motion for summary judgment, and (2) dismiss without prejudice all of Ellis's claims except his access-to-the-courts and retaliation claims against PC Hetrick for events on March 28, 2018. If the Court adopts this recommendation, COs Balbierz and Crisp will be dismissed from the case.

Dated: February 4, 2020        /s/ *Maarten Vermaat*
                               MAARTEN VERMAAT
                               U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).